# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| ANGELA CAMP,<br><br>Plaintiff,<br><br>vs.<br><br>CIRCLE K STORES, INC., doing business as Circle K and/or Flash Foods, and DAVID RADER,<br><br>Defendants. | CIV. ACTION NO. 5:20-cv-00364<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff Angela Camp ("Plaintiff" or "Camp"), by and through the undersigned Counsel of Record, and hereby files this Complaint for Damages against Defendants Circle K Stores, Inc., doing business as Circle K and/or Flash Foods, and David Rader (*collectively,* "Defendants"), respectfully showing the Court as follows:

## JURISDICTION AND VENUE

### 1.

The above-captioned case is commenced pursuant to: (a) 42 U.S.C. §§ 2000e, *et seq.*, Title VII of the Civil Rights Act of 1964, as amended, ("Title VII") for pregnancy discrimination, gender/sex discrimination, race discrimination, and retaliation; (b) the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981") for race discrimination and retaliation; (c) the Americans with Disability Act of 1990, as amended, 42 U.S.C. §§ 12101, *et seq.*, ("ADA") for pregnancy discrimination and retaliation; (d) the Equal Pay Act of 1963, as amended, 29 U.S.C. §§ 206(d), *et seq.*, ("Equal Pay Act") for gender discrimination and retaliation; (e) the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. §§ 2601, *et seq.*, ("FMLA") for retaliation; and (f) the laws of the State of Georgia for intentional infliction of emotional distress, as well as negligent retention and supervision.

### 2.

This Court has original jurisdiction over Plaintiff's Title VII, Section 1981, ADA, and FMLA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's State law claim pursuant to 28 U.S.C. § 1367.

3.

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because Defendants reside and/or maintain a place of business in the Middle District of Georgia, Macon Division, and the unlawful employment practices forming the basis of the Complaint occurred in this District and Division.

4.

Plaintiff satisfied all administrative prerequisites to institute this action. Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity ("EEOC") within one-hundred-and-eighty (180) calendar days from the day the discrimination took place (Charge No. 410-2020-04533) and Plaintiff has timely commenced the above-captioned case within ninety (90) days of receipt of the Notice of Right to Sue, dated July 17, 2020.

**PARTIES**

5.

Camp is a Caucasian female citizen of the United States, resident of the State of Georgia, and entitled to bring an action of this nature and type.

6.

Camp is a resident of the Middle District of Georgia and is subject to this Court's jurisdiction.

7.

At all times relevant to the above-captioned case, Camp was an employee of Circle K Stores, Inc., doing business as Circle K and/or Flash Foods, within the meaning of, *inter alia*, Title VII, Section 1981, ADA, and FMLA.

8.

Defendant Circle K Stores, Inc., doing business as Circle K and/or Flash Foods, ("Circle K") is Foreign Profit Corporation (Control Number K327883) authorized to do, and is actually doing, business in the State of Georgia.

9.

Defendant Circle K operates convenience stores and fuel retailers located throughout the State of Georgia, including, but not limited to, Store No. 253, 2699 Watson Boulevard, Warner Robins, Georgia 31088 ("Store No. 253"), Store No. 215, 2818 Watson Boulevard, Centerville, Georgia 31028 ("Store No. 215"), and Store No. 132, 10136 Hawkinsville Road, Warner Robins, Georgia 31093 ("Store No. 132").

10.

Defendant Circle K may be served with Summons and this Complaint for Damages via its Registered Agent, Corporation Service Company, 40 Technology Parkway South, Suite 300, Norcross, Georgia 30092.

11.

Defendant Circle K is and was, at all relevant times, a private employer engaged in an industry affecting commerce within the meaning of Title VII, Section 1981, ADA, and FMLA, employing more than fifty (50) employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding calendar years.

12.

Defendant David Rader ("Rader")—African-American male—is and was, at all relevant times, a citizen of the United States, resident of the State of Georgia, and subject to the jurisdiction of this Court.

13.

Defendant Rader is and was, at all relevant times, an employee of Defendant Circle K, District Manager of Defendant Circle K, involved in the day-to-day operation of Defendant Circle K, and regularly exercised authority to: (a) hire and terminate employees, (b) determine the schedules and assignments for employees, (c) supervise employees, and (d) otherwise control operation of Defendant Circle K.

14.

Defendant Rader is an employee of Defendant Circle K and, at all relevant times, Defendant Rader was Plaintiff Camp's direct supervisor, who participated in the unlawful discriminatory and tortious conduct described herein.

15.

Defendant Rader may be served with process at Defendant Circle K's Corporate Office located at 215 Pendleton Street, Waycross, Georgia 31501.

## STATEMENT OF FACTS

16.

Defendant Circle K, a subsidiary of Alimentation Couche-Tard, is a convenience store operator and fuel retailer headquartered in Tempe, Arizona, with locations throughout the State of Georgia, including, but not limited to, the following:  (a) Store No. 253, 2699 Watson Boulevard, Warner Robins, Georgia 31088 ("Store No. 253"); (b) Store No. 215, 2818 Watson Boulevard, Centerville, Georgia 31028 ("Store No. 215"); (c) and Store No. 132, 10136 Hawkinsville Road, Warner Robins, Georgia 31093 ("Store No. 132").

17.

Plaintiff Camp is a thirty-five (35) year old Caucasian female and, at all relevant times, Plaintiff Camp was pregnant.

18.

At all relevant times, Plaintiff Camp was a qualified individual under the ADA.

19.

After graduating from Chesapeake Senior High School located in Pasadena, Maryland, in 2002, Camp received certifications in funeral service education, medical billing and coding, as well as medical transportation.

20.

Before working for Circle K, Camp served in several positions, including, but not limited to, Receptionist with KEG Realtors, Waitress with Strathams Landing Golf Course, and Delivery Driver for FedEx.

21.

On or about September 13, 2010, Camp began working at Store No. 253 located in Warner Robins, Georgia, as a Customer Service Representative.

22.

As a Customer Service Representative, Camp was responsible for, among other tasks, greeting and assisting customers, operating cash registers, stocking shelves, maintaining the store, and other duties assigned by the Store Manager.

23.

After approximately six (6) months with Circle K, Camp was promoted to Assistant Manager, responsible for supporting the manager with daily operation of the Store, supervising representatives, and otherwise assisting customers.

24.

In or about November 2015, CST Brands, Inc, ("CST") purchased Flash Foods from the Jones Company, a Georgia-based convenience store change.  On or about August 22, 2016, Alimentation Couche-Tard, parent company of Circle K, ("ACT") entered into a merger agreement with CST to acquire CST's store locations.  Following the ACT and CST merger, stores under the former CST brand were converted and remodeled before operating under the Circle K brand.

25.

After years of diligent and stellar performance, Camp was promoted, in or about August 2018, to the position of Store Manager at Store No. 215 in Centerville, Georgia.

26.

As a Store Manager, Camp was responsible for, among other tasks, supervising employees, ensuring employees meet performance goals, hiring, scheduling, and terminating employees, as well as the day-to-day operation of the store.

27.

In or about November 2018, Defendant Rader—African-American male—became Circle K's District Manager, responsible for, among other things, recruiting, training, and managing Store Managers, establishing regional goals, ensuring stores adhere to company/industry regulations, as well as generally supervising the operations of stores within Rader's district.  Once Defendant Rader became District Manager, Rader updated Camp's employment status in the Circle K database because the previous District Manager failed to enter Camp's position and income following Camp's August 2018 promotion.  From that moment forward, Rader began bullying, harassing, and discriminating against Camp based solely on Camp's race, gender, and pregnancy.

28.

In or about January 2019, Camp became pregnant.  Camp had a rare form of twins, Monoamniotic-Monochorionic Twins, referring to identical twins that share the same amniotic sac and placenta while having separate umbilical cords. Consequently, Camp had a high-risk pregnancy, requiring certain treatments, aggressive fetal monitoring, and cesarean section.

29.

During early January 2019 while Camp was counting the Store's deposit in the office, Rader instructed Camp to leave the deposit in Camp's desk to fix a window sign.  However, in accordance with Circle K's policy, Camp remained in the office until the deposit was counted, bagged, and secured in the safe.  Rader never instructed male or African-American managers to violate Circle K policy or to engage in manual labor tasks while performing managerial duties.

30.

In or about January through February 2019, Store No. 253 was being remodeled.  Because Rader prevented Camp from scheduling the required number of representatives and limited the number of employee-hours at the Store, Camp was prevented from timely completing the remodeling.  Although Rader did not prevent African-American or male Store Managers from scheduling the necessary staff to

timely complete remodeling.  Rader reprimanded Camp for not timely completing the remodeling without any assistance.

31.

On or about March 8, 2019, Camp sent a text message to Camp's former District Manager, Lisa Sorrow ("Sorrow"), who had transferred to another District with Circle K.  Specifically, Camp stated, "Hey Lisa.  I don't know who else to message.  I'm having a problem here and my problem is with David.  So I can't go to him.  I have a feeling Eric is not going to hear me out.  What should I do."  Sorrow simply responded, "Contact HR."   In this regard, on March 11, 2019, Mark Cribb, Circle K's Service Desk, merely stated, "You can contact HRsolve. hrsolve@circlek.com."

32.

Camp formally notified Rader of Camp's pregnancy, which was already visible, on or about March 13, 2019.

33.

On March 14, 2019—the day after being notified of Camp's pregnancy—Rader stated that Camp was not "moving fast enough to suit" Rader—referring to Camp's pregnancy.  Then, Rader escorted Camp to her vehicle, where Rader stated that Camp was being demoted to Customer Service Representative and transferred

to Store No. 132 in Warner Robins, Georgia, where Katrina Trivette ("Trivette") was Store Manager.  Rader never provided a reason for the demotion and transfer.

34.

Upset and shaken by the sudden and unexpected demotion, Camp began shaking, trembling, and crying uncontrollably.  Due to the shock, Camp requested to take March 15, 2019, as a personal day.  Rader denied Camp's request and instructed Camp to report to Store No. 132 the next day.

35.

On March 15, 2019, Camp reported to Store No. 132, which operated a different system related to the Shell fuel sold at the Store.  As a result, Camp was unable to properly operate the cash register.  Trivette refused to train or assist Camp, forcing Camp to learn by observing the other employees.  And, when Camp asked for an assignment, Trivette simply responded, "whatever you want."

36.

After one (1) shift at Store No. 132, Defendant Rader again transferred Camp to the Store located at 1242 Russell Parkway, Warner Robbins, Georgia, before again transferring Camp back to Store No. 253.

37.

On or about March 16, 2019, Camp sent an e-mail to Circle K's Human Resource Department. Specifically, Camp stated, "Good morning. This email is actually long overdue but now that my market managers solutions are starting to take a negative effect on my life I feel it's time to speak up. I have been an employee of flash foods since September of 2010 . . . . In late 2018, I got assigned a new market manager who has since turned my world upside down. I need to speak with someone to lay out all of the details of the issues I'm having. If there is someone I could speak with that would be great. Thank you so much for your time and continued opportunities." Gloria Sainz simply responded, "Thank you. Your Human Resources Manager is Amanda Kildow her phone # is 912/490-22430"—which is an inoperable phone number. Camp was unable to contact Amanda Kildrow.

38.

Due to the stress caused by multiple transfers, harassment, mistreatment, and discrimination on or about April 10, 2019, Camp began bleeding, causing Camp to seek treatment at the Medical Center of Peach County, where Camp received an ultrasound before miscarrying one of the twins.

39.

Upon returning to work in April 2019, Defendant Rader asked Camp to serve as an Assistant Manager at the Store located at 12020 Watson Boulevard. However, Rader stated that Camp would only receive the same rate of pay as a Customer Service Representative. Because Camp had been mistreated as a Manager and was only offered the pay of a Customer Service Representative, Camp declined the request and continued working as a Customer Service Representative. Rader did not offer and/or request that male Circle K employees work as Assistant Store Managers while receiving compensation as a Customer Service Representative.

40.

During an examination on October 16, 2019, Camp's physician instructed Camp to cease working and begin maternity leave. Immediately thereafter, Camp texted Defendant Rader a picture of the physician's instructions, delivered a copy of the instructions to the Store Manager, and e-mailed a copy of the instructions to Circle K's Human Resources Department ("HR"). Both Defendant Rader and the Store Manager, Matt, thanked Camp for working as long as possible and said they would put the instructions in Camp's personnel file. Additionally, HR advised Camp that Camp would not be paid while on maternity leave because Camp did not have "manager insurance" for the entire year. Camp responded that she did not care about

being paid because Camp's physician ordered maternity leave due to the harassment, mistreatment, and discrimination in the workplace.

41.

Based upon physician instructions, in October 2019, Camp went on maternity leave.

42.

On or about November 18, 2019, Camp gave birth to a child.

43.

On November 20, 2019, Camp's Store Manager, Matt, sent Camp a text-message, congratulating Camp on the child birth, notifying Camp that "everything is still going well," and advising Camp, "You can let me know how long your recovery time is and when you would like to return to work whenever you get the opportunity."

44.

Unbeknownst to Camp, the same day the Store Manager was inquiring about Camp's return after giving birth—November 20, 2019, Rader terminated Camp's employment without any notification or discussion with Camp.

45.

Prior to the discrimination and termination described herein, Camp had not received any negative performance reviews, disciplinary actions, or complaints concerning Camp's professional performance.

46.

During December 2019, Camp attempted to access the employee portal to obtain Camp's W-2. Because Camp could not access the employee portal, Camp contacted Circle K's corporate office. At that time, an unidentified woman advised Camp that, on November 20, 2019, Camp's employment was terminated due to "undocumented and unexcused absence."

47.

On or about December 26, 2019, Camp contacted Becky Anderson, Circle K's Absence Manager and requested the basis of the termination of employment. That same day, Ms. Anderson stated, "I never received your paperwork to certify your leave, so you were terminated due to unapproved, undocumented leave as of November 20, 2019. However, prior to that date when the Store Manager congratulated Camp for the childbirth, Camp provided the maternity leave document to both Rader and the Store Manager.

48.

When Camp sought unemployment benefits, Circle K changed direction and stated that Camp's employment was terminated due to unspecified "poor work performance."

49.

Defendants terminated Camp's employment and punished Camp because Camp was pregnant and gave birth to a child.

50.

As a result of Defendants' unlawful actions, Camp has suffered, among other things, lost wages and benefits, as well as severe emotional distress.

51.

In no uncertain terms, Defendants repeatedly transferred and terminated Camp's employment specifically because of Camp's pregnancy.

52.

Other employees and individuals, outside of Camp's protected class, were treated differently because these employees and individuals, who were not pregnant, were not repeatedly transferred and/or terminated due to pregnancy.

53.

Despite any unfounded concerns Defendants may have harbored concerning Camp's pregnancy, Camp was qualified and capable of continuing her employment as a Store Manager and/or Customer Service Representative, as evidenced by Camp's previous years of employment.

## CLAIMS FOR RELIEF

### COUNT I:
### PREGNANCY DISCRIMINATION
### IN VIOLATION OF TITLEVII AND ADA
**(Against Defendant Circle K Stores, Inc.)**

54.

Camp re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

55.

Title VII and the ADA prohibits employers from discriminating against employees because of pregnancy.

56.

Defendants violated Title VII and the ADA, such that a cause of action exists where discrimination on the basis of pregnancy was the causative agent of adverse actions directed at Camp by Defendants.

57.

At all relevant times, Camp was a pregnant female, qualified individual under the ADA, an employee of Defendant Circle K, and a member of a protected class under Title VII and the ADA.

58.

At all relevant times, Camp was qualified for her positions, and capable of performing, as a Store Manager and/or Customer Service Representative.

59.

At all relevant times, Defendant Circle K was Camp's employer, as defined by Title VII and the ADA.

60.

At all relevant times, Defendant Rader was Defendant Circle K's District Manager and Camp's direct supervisor, responsible for, among other things, hiring and terminating Camp's employment, as well as transferring Camp to different stores.

61.

After discovering that Camp was pregnant, Defendants demoted and transferred Plaintiff to a different store solely because of Camp's pregnancy.

62.

Upon learning of Camp's pregnancy, Defendant Rader explicitly stated that Camp was not "moving fast enough to suit him" before transferring and demoting Camp.

63.

After discovering that Camp gave birth, Defendants terminated Plaintiff's employment solely because of Camp's pregnancy.

64.

Defendants' transfer, demotion, and termination of Camp's employment due to pregnancy constitutes unlawful discrimination on the basis of pregnancy in violation of Title VII and the ADA.

65.

As a result of the transfer, demotion, and termination of employment based solely upon Camp's pregnancy, Camp was treated less-favorably than similarly-situated, non-pregnant employees of Defendant Circle K in violation of Title VII and the ADA.

66.

Defendants willfully and wantonly disregarded Camp's rights.

67.

Defendants discriminated against Camp in bad faith.

68.

The effect of the conduct complained of herein has been to deprive Camp of equal employment opportunity and to otherwise adversely affect Camp's status as an employee solely because of Camp's pregnancy.

69.

As a direct and proximate result of Defendants' intentional violation of Title VII and the ADA, Camp has been made the victim of acts that have adversely affected Camp's psychological and physical well-being and, therefore, Defendant Circle K is liable for these damages.

## COUNT TWO:
## SEX/GENDER DISCRIMINATION
## IN VIOLATION OF TITLE VII
**(Against Defendant Circle K Stores, Inc.)**

70.

Camp re-alleges and incorporates each and every preceding Paragraph of the Complaint as if set forth fully herein.

71.

Title VII prohibits employers from discriminating against employees because of gender/sex.

72.

Defendants violated Title VII, such that a cause of action exists where discrimination on the basis of gender/sex was the causative agent of adverse actions directed at Camp by Defendants.

73.

During the course of employment, Defendants unlawfully and knowingly discriminated against Camp based upon her gender/sex, and treated Camp less-favorably than similarly-situated male employees in violation of Title VII.

74.

Camp, as a thirty-five (35) year old Caucasian female, is a member of a protected group.

75.

From about September 2010 until November 2019, an employer-employee relationship existed between Camp and Circle K, such that Camp was an "employee" and Circle K was an "employer" within the meaning Title VII.

76.

From about September 2010 until November 2019, an employer-employee relationship existed between Camp and Circle K, such that Camp was an "employee" and Southland was an "employer" within the meaning Title VII.

77.

Beginning in or about August 2018, Camp was employed as a Store Manager with Circle K.

78.

During the course of Camp's employment as Store Manager, Circle K's employees excluded Camp from professional Store Manager responsibilities, instructed Camp to complete tasks of Representatives, prevented Camp from properly staffing Camp's store during a remodeling, reprimanded, demoted, repeatedly transferred, requested that Camp act as Assistant Manager while receiving the payment of a Representative, and terminated Camp's employment based upon gender/sex.

79.

Despite Defendants' knowledge of Camp's high-risk pregnancy and physician instructions to cease working, Defendants terminated Camp's employment without cause or justification while Camp was on maternity leave.

80.

The discrimination to which Camp was subjected to by Defendants was based upon gender/sex in violation of Title VII and, thus, Camp is entitled to all appropriate relief provided under the law.

81.

Defendants' actions constituted discrimination and disparate, adverse treatment based upon gender/sex such that the intentional actions by Defendants adversely impacted Camp's terms, conditions, and privileges of employment.

82.

Defendants' actions created a hostile work environment based upon gender/sex such that the intentional actions by Defendants adversely impacted Camp's terms, conditions, and privileges of employment.

83.

Defendants' discriminatory conduct was accomplished pursuant to an unofficial policy, practice, and/or custom of Circle K.

84.

As a direct and proximate result of Defendants' intentional and unlawful conduct, which was intended to cause Camp harm and/or was committed with reckless disregard of the harm caused to Camp, in derogation of her Federally-protected rights, Camp suffered and continue to suffer emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, danger to their reputation, and other pecuniary loses.

85.

Defendants' intentional and illegal conduct entitles Camp to compensatory damages, as well as any and all other remedies available under Title VII.

86.

Defendants' actions with regard to Camp demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care and, therefore, Camp is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

**COUNT III:**
**RACE DISCRIMINATION**
**IN VIOLATION OF TITLE VII AND SECTION 1981**
**(Title VII Claim Against Defendant Circle K Stores, Inc.)**
**(Section 1981 Claim Against All Defendants)**

87.

Camp re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

88.

Title VII and Section 1981 prohibit employers from discriminating against employees because of race.

89.

Defendants violated Title VII and Section 1981, such that a cause of action exists where discrimination on the basis of race was the causative agent of adverse actions directed at Camp by Defendants.

90.

As a Caucasian female, Camp is a member of a protected class under Title VII and Section 1981.

91.

At all times relevant to this action, Camp was qualified for her positions and diligently performed as a Customer Service Representative, Assistant Store Manager, and Store manager while employed by Circle K.

92.

Furthermore, Camp's education, skill, experience, and performance were at least on par with other non-Caucasian, similarly-situated Circle K employees.

93.

At all times relevant to this action, the relationship between Camp and Circle K was a relationship of "employee" to "employer," such that a cause of action exists where discrimination on the basis of race is alleged to be the cause of an adverse action directed to the employee by the employer.

94.

At all times relevant, Circle K acted by and through its agents and employees, including, but not limited to, Rader, Trivette, and Store Managers, each of whom acted in the course and scope of their employment with and for Circle K.

95.

Despite Camp's diligent work performance, Defendants intentionally discriminated against Camp on the basis of his race by, among other things, subjecting Camp to unfair treatment compared to similarly-situated non-Caucasians employees, making discriminatory and disparaging remarks toward Camp, excluding Camp from professional Store Manager responsibilities, instructing Camp to complete tasks of Representatives, preventing Camp from properly staffing Camp's store during a remodeling, reprimanding, demoting, repeatedly transferring, requesting that Camp act as Assistant Manager while receiving the payment of a Representative, and terminating Camp's employment based upon race.

96.

Consequently, Camp was treated less-favorably than similarly-situated non-Caucasian Circle K employees in violation of Title VII and Section 1981.

97.

Defendants' conduct adversely impacted the terms, conditions, and privileges of Camp's employment.

98.

Defendants' actions constitute unlawful race and national origin discrimination in violation of Title VII and Section 1981.

99.

Defendants have willfully and wantonly disregarded Plaintiff's statutory rights and Defendants' discrimination was undertaken in bad faith.

100.

As a direct and proximate result of Defendants' unlawful employment practices, which were intended to cause Camp harm and/or were committed with reckless disregard of the harm caused to Camp, in derogation of Camp's Federally-protected rights, Camp has suffered and continues to suffer the indignity of race and national origin discrimination, the invasion of his right to be free from race and national origin discrimination, humiliation, emotional pain, mental distress, inconveniences and mental anguish.

101.

Defendants' intentional and illegal conduct entitles Camp to compensatory damages, as well as any and all other remedies available under Title VII and Section 1981.

102.

Defendants' actions with regard to Camp demonstrate willful misconduct, malice, fraud, wantonness, oppression, and a complete lack of care entitling Camp to an aware of punitive damages to deter, punish, and penalize Circle K for and from similar future conduct.

## COUNT IV:
## GENDER DISCRIMINATION
## IN VIOLATION OF THE EQUAL PAY ACT
**(Against Defendant Circle K Stores, Inc.)**

103.

Camp re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

104.

The Equal Pay Act prohibits employers from discriminating on the basis of gender/sex by paying wages to employees at a rate less than the rate the employer pays wages of the opposite gender/sex for equal work.

105.

Camp is a thirty-five year old Caucasian female and member of a protected group.

106.

At all relevant times, Camp was an employee of Circle K within the meaning of the Equal Pay Act, 29 U.S.C. § 203.

107.

During the course of Camp's employment, Circle K unlawfully and knowingly discriminated against Camp based upon gender/sex in violation of, *inter alia*, the Equal Pay Act.

108.

Although Camp performed work requiring, at a minimum, equal skill and effort as that put forth by Camp's male co-workers, Circle K requested that Camp perform as an Assistant Store Manager at a lower rate than Circle K's male Assistant Store Managers because of Camp's sex/gender.

109.

Despite the fact that Camp worked under similar conditions as male co-workers and held equivalent or greater seniority, Circle K requested that Camp serve as an Assistant Store Manager at a lower rate than male employees because of Camp's sex/gender.

110.

Circle K's decision and offer to pay Camp at a lesser rate because Camp is a female is a violation of Camp's rights under the Equal Pay Act.

111.

Circle K knew, or showed reckless disregard for the fact, that Circle K failed to offer to pay Camp equal compensation in violation of the Equal Pay Act.

112.

Circle K's conduct in violation of the Equal Pay Act was both willful and in bad faith.

113.

As the direct and proximate result of Circle K's intentional, willful, unlawful, and discriminatory conduct in derogation of Camp's Federally-protected rights, Camp has suffered, among other things, lost wages and benefits of employment.

## COUNT V:
## RETALIATION
## IN VIOLATION OF TITLE VII, SECTION 1981 ADA, FMLA, AND EQUAL PAY ACT

114.

Camp re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

115.

Title VII, Section 1981, ADA, FMLA, and Equal Pay Act prohibit employers from retaliating against an employee who opposes an employment practice prohibited by, or exercise or attempt to exercise rights under, Title VII, Section 1981 the ADA, the FMLA, and/or the Equal Pay Act.

116.

At all relevant times, Camp was a pregnant Caucasian female, qualified individual, an eligible employee who maintained a serious health condition, and member of a protected group.

117.

During the relevant period, the relationship between Camp and Circle K was an employer-employee relationship within the meaning of Title VII, Section 1981, the ADA, the FMLA, and the Equal Pay Act, such that a cause of action exists where retaliation on the basis of opposing discrimination, reporting discrimination, and/or exercising protected Federal rights are alleged to be the causative agent of adverse employment action(s) directed to Camp by Defendants.

118.

During the course of Camp's employment, Defendants unlawfully and knowingly discriminated against Camp based upon, among other things, gender/sex in violation of, *inter alia*, Title VII, Section 1981, and the Equal Pay Act.

119.

Camp repeatedly complained to Circle K's employees about unlawful employment practices based upon gender/sex.

120.

Following Camp's complaints concerning, among other things, unlawful employment practices, Defendants took adverse employment actions against Camp, including, but not limited to, subjecting Camp to demotion, repeated transfers, refusing to provide sufficient professional assistance, reprimands, and the termination of employment without cause.

121.

When terminating the employment of Camp while on maternity leave during a high-risk pregnancy after Camp miscarried a twin child, Circle K retaliated against Camp for exercising her right to take medical leave, as provided by the FMLA, for Camp's serious health condition.

122.

The effect of Defendants' actions has been to suspend and deprive Camp of an employment position, as well as loss income in the form of wages, prospective retirement benefits, social security, and other benefits due Camp because of the exercise of Camp's Federally-protected rights.

123.

Defendants' adverse employment action(s) against Camp constitute unlawful retaliation against Camp in violation of, *inter alia*, Title VII, Section 1981, the ADA, the Equal Pay Act, and the FMLA.

124.

Defendants' retaliatory actions were willful, deliberate, and intended to cause Camp harm and/or were committed with reckless and wanton disregard of the harm causes to Camp in derogation of Camp's Federally-protected rights.

125.

Defendants' discriminatory and retaliatory actions were undertaken in bad-faith.

126.

The retaliation to which Camp was subjected by Defendants entitles Camp to all appropriate relief afforded under the law.

127.

As a result of Defendants' intentional and unlawful actions, Camp has suffered lost compensation and other benefits of employment, physical and emotional distress, inconvenience, humiliation, damage to her reputation, other indignities, as well as past and future pecuniary losses.

128.

Defendants' actions with respect to Camp have demonstrated willful misconduct, malice, fraud, wantonness, oppression, and a complete want of care, and thus, Camp is entitled to an award of punitive damages to deter, punish, and penalize Defendants for and from similar future conduct.

## COUNT VI:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## IN VIOLATION OF THE LAWS OF THE STATE OF GEORGIA
### (Against All Defendants)

129.

Camp re-alleges and incorporates, by reference, each and every preceding Paragraph of the Complaint as if set forth fully herein.

130.

Defendants statements, conduct, and behavior towards Camp were intentional and reckless, extreme and outrageous, causing Camp severe shame, humiliation, embarrassment, and emotional distress of a nature that no pregnant person should endure.

131.

Defendants' statements, conduct, and behavior towards Camp demonstrate, among other things, a "retaliatory animus."

132.

At all relevant times, the Parties had a special, employer-employee relationship, wherein Defendants had control over Camp and Camp's income and/or livelihood during her high-risk pregnancy.

133.

When engaging in the intentional, reckless, extreme, and outrageous conduct towards Camp, Defendants knew that Camp was pregnant.

134.

Defendants repeatedly transferred Camp, denied Camp professional assistance, demoted, terminated employment, and engaged in other unlawful and tortious conduct due to Camp's pregnancy.

135.

Defendants knew or should have known that such conduct would result in the severe emotional distress suffered by Camp.

136.

As a result of Defendants' conduct, Camp has and will continue to suffer severe emotional distress and other damages for which Camp is entitled to recover.

**COUNT VII**
**NEGLIGENT RETENTION AND SUPERVISION**
**IN VIOLATION OF GEORGIA LAW**
**(Against Defendant Circle K Stores, Inc.)**

137.

Camp re-alleges and incorporates by reference each of the foregoing paragraphs as if fully restated herein.

138.

As a result of the actions taken by Defendant Rader, Camp suffered, among other things, discrimination based on pregnancy, discrimination based on gender, retaliation, and other unlawful conduct.

139.

Circle K owed Camp a duty to hire, retain, and supervise employees who would lawfully conduct themselves and not engage in discriminatory or tortious conduct.

140.

By negligently retaining and supervising its employees, including Rader and Trivette, Circle K breached its duty to hire, retain, and supervise employees who would lawfully behave.

141.

Circle K knew or, in the exercise of ordinary diligence, should have known of the propensity of its employees, to engage in unlawful conduct against Camp.

142.

By failing to engage in any corrective or remedial action, Circle K ratified, condoned, and/or adopted its employees' unlawful conduct.

143.

As a direct and proximate result of Circle K's negligent retention and supervision of its employees, as well as the failure to take any remedial or corrective action with respect to the known unlawful actions taken by Circle K's employees, including Rader and Trivette, Camp suffered damages.

144.

Circle K's negligent conduct entitles Camp to compensatory damages, punitive damages, as well as any and all other remedies available under the law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Camp respectfully requests that this Court:

(1)   Grant Camp a trial by jury as to all triable issues of fact;

(2)   Grant declaratory judgment that Camp's rights under Title VII, Section 1981, the ADA, the FMLA, the Equal Pay Act, and the laws of the State of Georgia were violated;

(3)   Grant an injunction prohibiting the Defendants from engaging in such unlawful conduct in the future;

(4)   Award compensatory damages in an amount to be determined by a jury;

(5)   Award appropriate back pay, unpaid wages, and compensation for other damages in amounts to be shown at trial;

(6)   Award prejudgment interest on any award of back pay;

(7)   Award liquidated damages;

(8)   Award punitive damages in an amount reasonable and commensurate with the harm done and calculated to deter such conduct in the future;

(9)   Award attorneys' fees, costs, and disbursements; and

(10)  Award such further and additional relief as may be just and appropriate.

Respectfully submitted, this 14th day of September, 2020.

MOLDEN & ASSOCIATES

*/s/    Regina S. Molden*
REGINA S. MOLDEN
Georgia Bar No. 515454
T. ORLANDO PEARSON
Georgia Bar No. 180406
Peachtree Center – Harris Tower, Suite 1245
233 Peachtree Street, NE
Atlanta, Georgia 30303
(404) 324-4500
(404) 324-4501 (facsimile)
Email:  rmolden@moldenlaw.com
Email:  topearson@moldenlaw.com

*Counsel for Plaintiff Angela Camp*

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| ANGELA CAMP, | |
| Plaintiff, | |
| vs. | CIV. ACTION NO. 5:20-cv-00364 |
| CIRCLE K STORES, INC., doing business as Circle K and/or Flash Foods, and DAVID RADER, | JURY TRIAL DEMANDED |
| Defendants. | |

## LOCAL RULE AND SERVICE CERTIFICATION

The undersigned certifies that this document has been prepared with a font and point selections approved by the Court in Local Rules and that the foregoing **Complaint for Damages** has been filed with the Clerk using the CM/ECF system which will notify to the attorney(s) of record.

Respectfully submitted, this 14th day of September, 2020.

MOLDEN & ASSOCIATES

*/s/ T. Orlando Pearson*
T. ORLANDO PEARSON
Georgia Bar No. 180406